```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
UNITED STATES OF AMERICA,              :        S1 20cr0052(DLC)
                                       :
              -v-                      :        OPINION AND ORDER
                                       :
EDWARD ABREU, ALICIA ARIAS, LUIS       :
FRIAS, TIMOTHY WALLACE, a/k/a "Larry," :
DEREK LIVINGSTON, a/k/a "Wiz,"         :
CHARKEEM PAYNE, a/k/a "Lite," CAROL    :
LANE, TRACEY SMITH, a/k/a "Trey,"      :
HERMAN STEWARD, TASHA BURNETT, a/k/a   :
"Dutchis," TYRISS GWUNN, EDGAR MONTES, :
a/k/a "E," and FERNANDO DISLA, a/k/a   :
"Lolo,"                                :
                                       :
                          Defendants.  :
                                       :
-------------------------------------- X
```

Appearances:

For the United States:
Thomas John Wright
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007
212-637-2295

For Defendant Derek Livingston:
Megan Elizabeth Wall-Wolff
90 Broad Street
Ste 22nd Floor
New York, NY 10004
212-920-0257

Anna Nicole Sideris
Peter Enrique Quijano
40 Fulton Street, Floor 23
New York, NY 10038
212-686-0666

DENISE COTE, District Judge:

Derek Livingston has moved to suppress evidence of the seizure of a firearm on September 27, 2019, during the search of a car in which he was a passenger.  For the following reasons, the motion is denied.

## Background

The Government has proffered the following in opposition to the motion to suppress.  On September 27, 2019, at 1:00 a.m., New York City Police Department Officer Sean Kern, who was riding in an unmarked police vehicle with two other NYPD officers, saw a person throw litter from the rear passenger-side window of a livery cab.  When the officers' car pulled alongside the livery cab at a red light, Officer Kern watched the two passengers in the rear of the vehicle talk with each other and saw a black plastic bag in the lap of the passenger sitting in the rear passenger-side seat.

When the red light changed, the officers pulled the livery cab over on the basis of the observed littering.  As the red and blue light of the police car switched on, Officer Kern saw the passenger on the passenger side of the vehicle bend down at the waist.  When the officers approached the car, they activated their body cameras and recorded the sights and sounds of the encounter.  Livingston was seated in the rear of the vehicle on the passenger side.  Officer Kern talked with him through an

open car window while standing near him.  Livingston confirmed
to Officer Kern that he had littered.  He explained that he was
eating and had thrown something out of the window.  He held up
two white plastic "takeout" bags.  Shining his flashlight into
the car, the Government represents that Officer Kern saw a black
plastic bag at Livingston's feet under the car seat in front of
him.

Officer Kern asked Livingston to step out of the car.
Livingston placed the white plastic bags into the footwell and
stepped out of the car.  Livingston was frisked and directed to
stand at the rear of the car.  Another officer asked the second
passenger, who is Livingston's brother, to exit the car, frisked
him, and directed him to the rear of the car as well.

While Livingston and his brother were standing at the rear
of the car under the control of fellow officers, the bodycam
footage shows that Officer Kern crouched down to reach into the
footwell of the car where Livingston had been seated.  Resting
his left arm on the car seat where Livingston had been sitting,
Officer Kern held a flashlight in his left hand and reached with
his right arm into the footwell.  The white plastic bags are
visible in the footwell.  The rustling of plastic is heard on
the recording as Officer Kern opens one of the white plastic
bags.  Almost immediately, Officer Kern is seen lifting the
black plastic bag out of the footwell and placing it onto the

car seat.  Approximately seven to eight seconds passed between the time the officer first reached into the footwell and the time his hand emerged holding the black plastic bag.  During the search, Officer Kern did not shift his body to reach further into the car than the retrieval of the two white plastic bags required.  It appears that the black bag was either under or resting next to the white plastic bags.

The black bag was tightly wrapped around an L-shaped object.  The Government represents that Officer Kern felt a firearm inside the black bag.  Livingston and his brother were arrested immediately after that.  To this point, the entire encounter had taken approximately two minutes.  Next, the bodycam footage shows Officer Kern opening the black plastic bag to display the firearm for his body camera.  It is evidence of the recovery of this firearm that Livingston seeks to suppress.

On October 17, 2019, Livingston testified before a state grand jury that he had been eating chicken in the livery car and had thrown bones out of the window.  In an affidavit in support of the motion to suppress, Livingston explains that when he entered the vehicle he placed the black plastic bag "under the front passenger seat".  Through this assertion he disputes that Officer Kern saw the black plastic bag in his lap or that the officer saw a black plastic bag at Livingston's feet when Livingston held up the white plastic bags.

4

## Discussion

The Fourth Amendment of the Constitution provides that
"[t]he right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable searches and
seizures, shall not be violated, and no Warrants shall issue,
but upon probable cause . . . ."  U.S. Const. amend. IV.
"Warrantless searches are per se unreasonable under the Fourth
Amendment -- subject only to a few specifically established and
well-delineated exceptions."  United States v. Babilonia, 854
F.3d 163, 178 (2d Cir. 2017) (quoting Katz v. United States, 389
U.S. 347, 357 (1967)).  These exceptions include a search-
incident-to-arrest, the automobile exception, and the plain view
exception.

I.   Search Incident to Arrest

"The search-incident-to-arrest doctrine is an exception to
the general requirement that an officer must obtain a judicial
warrant supported by probable cause before conducting a
search."  United States v. Diaz, 854 F.3d 197, 205 (2d Cir.
2017).  "When an arrest is made . . . it is entirely reasonable
for the arresting officer to search for and seize any evidence
on the arrestee's person in order to prevent its concealment or
destruction . . . ."  Riley v. California, 573 U.S. 373, 383
(2014) (citation omitted).  "It makes no difference whether the
search occurs before or after the arrest, so long as it is

substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." Diaz, 854 F.3d at 205 (citation omitted).

Additionally, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332, 351 (2009). The "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." Id. at 343. See Riley, 573 U.S. at 385 (explaining how Gant straddles exceptions for a search incident to arrest and the automobile exception).

II. The Automobile Exception

"If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more." United States v. Jones, 893 F.3d 66, 70 (2d Cir. 2018) (citation omitted). See also Gant, 556 U.S. at 347. Probable cause exists when "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that evidence of a crime will be found in the place to be

searched." <u>Jones</u>, 893 F.3d at 71 (citation omitted).  The scope
of a warrantless search of an automobile is "defined by the
object of the search and the places in which there is probable
cause to believe that it may be found." <u>United States v. Ross</u>,
456 U.S. 798, 824 (1982).  See also <u>California v. Acevedo</u>, 500
U.S. 565, 579-80 (1991).

III. The Plain View Exception

"The plain view exception authorizes seizure of illegal or
evidentiary items visible to a police officer whose access to
the object has some prior Fourth Amendment justification and who
has probable cause to suspect that the item is connected with
criminal activity." <u>United States v. Gamble</u>, 388 F.3d 74, 76
(2d Cir. 2004) (citation omitted).  <u>See also</u> <u>United States v.
Delva</u>, 858 F.3d 135, 149 (2d Cir. 2017).  Under the plain-view
exception, "if police are lawfully in a position from which they
view an object, if its incriminating character is immediately
apparent, and if the officers have a lawful right of access to
the object, they may seize it without a warrant." <u>Minnesota v.
Dickerson</u>, 508 U.S. 366, 375 (1993).  "Where the initial
intrusion that brings the police within plain view of such an
article is supported, not by a warrant, but by one of the
recognized exceptions to the warrant requirement, the seizure is
also legitimate." <u>Horton v. California</u>, 496 U.S. 128, 135
(1990).  Although "inadvertence is a characteristic of most

legitimate plain-view seizures, it is not a necessary condition." Id. at 130 (citation omitted).

If police "lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object . . . the plain-view doctrine cannot justify its seizure." Dickerson, 508 U.S. at 375.  Additionally, the plain view doctrine cannot be invoked to justify an extended search. "[T]he doctrine is associated only with the seizure of items that are -- as the label indicates -- in plain view." Delva, 858 F.3d at 149.

IV.  Application

Officer Kern's seizure of the gun was lawful under the Fourth Amendment.  There is no dispute that Livingston violated the law when he tossed remnants of his dinner from the car window and that there was probable cause for his arrest based on that offense.

The New York City Administrative Code section 16-118 prohibits throwing "ashes, garbage, paper, dust or other rubbish and refuse of any kind whatsoever, in or upon any street or public place[.]"  N.Y.C. Admin. Code § 16-118(1)(a).  Violation of § 16-118(1)(a) is punishable by a fine or imprisonment of up to one day.  Id. at (8).  Littering is also a violation of New York Vehicle and Traffic Law.  N.Y. Veh. & Traf. Law § 1220.

As a result, when the officers witnessed a person throw litter from the rear passenger-side window of the livery cab, they had probable cause to believe that they had witnessed a crime.  It is not disputed that they were entitled to stop the livery cab, conduct an investigation, and arrest the person who had littered.  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).  See also United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994) (officer can arrest a person who violates the New York Vehicle and Traffic Law in the officer's presence); People v. Ormsby, 816 N.Y.S.2d 623, 624 (2006) (police officer had probable cause to arrest defendant for littering).

Having concluded that the crime of littering had occurred, Officer Kern was entitled to enter the livery cab to retrieve evidence of the crime.  It is undisputed that the footwell near Livingston's seat contained such evidence, specifically, the plastic white "takeout" bags.  Livingston had shown Officer Kern those bags when he admitted that he had thrown trash from the car window and Livingston left those white plastic bags in the footwell when he exited the car.  Underscoring the rationale behind the automobile exception, if the bags had not been seized

immediately they would be lost forever once the livery cab drove away.

Finally, the officers were entitled to seize the gun when they entered the vehicle to retrieve the white plastic bags. It is undisputed that the livery vehicle was readily mobile, that the gun and the white plastic bags were in the very same area of the car, and that Officer Kern seized the gun in the course of retrieving the white plastic bags. Each of these items were seized by Officer Kern as he reached into the footwell in front of Livingston's seat. The defendant does not dispute that an officer touching the bag containing the gun would have understood that it contained a gun. The plastic bag contained only the gun and was wrapped around the gun. Thus, the "incriminating character" of the bag was "immediately" apparent. Dickerson, 508 U.S. at 375.

Livingston makes two arguments in support of his motion to suppress the gun and evidence of its seizure. First, he argues that the officers were not entitled to retrieve the white plastic bags as evidence of the littering crime since that crime was "complete" when Livingston ceased to throw objects from the car window. Law enforcement is entitled to enter a vehicle to retrieve evidence of an observed crime, whether or not the criminal activity has ceased. Knowles v. Iowa, 525 U.S. 113 (1998), on which Livingston relies, is inapposite. The crime at

issue in <u>Knowles</u> was speeding, and the arresting officers had no reason to believe that evidence of a crime was located within the vehicle.  <u>Id</u>. at 118.

Livingston also argues that even if Officer Kern was entitled to enter the vehicle to retrieve the white takeout bags, he was not entitled to conduct a "full search of the rest of the car."  Officer Kern, however, did not conduct a full search of the entire car.  As the videotape demonstrates, he searched only the backseat's footwell where the white plastic bags were located.  In a matter of seconds, he reached into that area and emerged with the black plastic bag containing the gun.

Finally, Livingston contends that a hearing is necessary to determine whether Officer Kern saw Livingston holding the black plastic bag in his lap or whether the officer saw the black plastic bag when Livingston displayed the white plastic bags to him.  Livingston asserts that Officer Kern could not have seen the black bag on either occasion since Livingston had reached into the footwell and placed the gun under the front seat as soon as he entered the livery vehicle.  Because Officer Kern's seizure of the weapon was lawful even if he did not previously see the black plastic bag, there is no need for a hearing.

## CONCLUSION

Livingston's motion to suppress a firearm seized on September 27, 2019 is denied.


Dated:     New York, New York
           January 6, 2021

                              _____
                                   DENISE COTE
                         United States District Judge