```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
UNITED STATES OF AMERICA,                :    S1 20cr0052(DLC)
                                         :
               -v-                       :    OPINION AND ORDER
                                         :
EDWARD ABREU, ALICIA ARIAS, LUIS         :
FRIAS, TIMOTHY WALLACE, a/k/a "Larry,"   :
DEREK LIVINGSTON, a/k/a "Wiz,"           :
CHARKEEM PAYNE, a/k/a "Lite," CAROL      :
LANE, TRACEY SMITH, a/k/a "Trey,"        :
HERMAN STEWARD, TASHA BURNETT, a/k/a     :
"Dutchis," TYRISS GWUNN, EDGAR MONTES,   :
a/k/a "E," and FERNANDO DISLA, a/k/a     :
"Lolo,"                                  :
                                         :
                         Defendants.     :
                                         :
---------------------------------------- X
```

Appearances:

For the United States:
Thomas John Wright
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007
212-637-2295

For Defendant Derek Livingston:
Megan Elizabeth Wall-Wolff
90 Broad Street
Ste 22nd Floor
New York, NY 10004
212-920-0257

Anna Nicole Sideris
Peter Enrique Quijano
40 Fulton Street, Floor 23
New York, NY 10038
212-686-0666

DENISE COTE, District Judge:

The defendant Derek Livingston has moved to suppress evidence of conversations intercepted through Title III wiretaps of his cellphone and evidence purportedly derived from those conversations.  For the reasons that follow, the motion is denied.

**Background**

On September 28, 2019, the Honorable Jesse Furman of the United States District Court for the Southern District of New York authorized the interception of wire and electronic communications over two cellphones, one believed to be used by Livingston[1] and another believed to be used by Timothy Wallace. The Order of interception found that there was probable cause to believe that during the period of the interception permitted by the Order, certain of the Target Subjects "will use the Target Cellphones in connection with, to facilitate, to accomplish, and to commit the Target Offenses specified herein."  It found that there was probable cause to believe that one or more of Livingston and several others were "involved in offenses involving the distribution of, and possession with intent to distribute, controlled substances, to wit, cocaine, the use of

---

[1] In a footnote to the affidavit, the agent explained that Livingston was in possession of the cellphone at the time of his arrest on September 27, 2019.

2

wire facilities to facilitate the same, the maintenance of drug-involved premises, conspiracy to do the same, and attempts to do the same, in violation of in violation of Title 21, United States Code, Sections 841, 843(b), 846, 848, and 856." Those crimes were identified as the Target Offenses.

The affidavit in support of the Government's application for that interception was also dated September 28, 2019. The affidavit, signed by a Drug Enforcement Administration agent, described information learned during an investigation conducted with the New York City Police Department of a drug trafficking organization ("DTO") operating in the vicinity of East 167th Street and Sheridan Avenue in the Bronx. The affidavit included information gleaned from confidential sources, "controlled buys" of crack cocaine, the analysis of toll data and location information from cellphones, communications intercepted over multiple cellphones pursuant to August 28 and September 28, 2019 court orders, recorded telephone conversations transmitted over prison lines, and other information.

Wallace is described in the affidavit as a hand-to-hand drug dealer within the DTO and as someone who receives deliveries of crack cocaine from the DTO's suppliers. An analysis of toll records for Livingston's telephone showed over 60 communications with Wallace and over a score with another member of the DTO between August 2 and September 18, 2019.

3

Video surveillance identified Livingston as present on "numerous" occasions near the DTO's corner of operations. Livingston's alias of "Wiz" was spray painted within the phrase "Gunna Gang Wiz" near 1221 Sheridan Avenue, which is also near the corner.

The affidavit quotes dialogue from six intercepted calls between Wallace and Livingston that occurred between September 14 and October 22, and explains the jargon and references in those conversations.  In those conversations, Livingston inquires whether Wallace had heard from his crack suppliers, observes that the DTO is doing a good deal of business at the moment, explains that he needs some crack, learns that Wallace is delivering a quantity of cocaine, recommends that the DTO staff its corner 24 hours per day to induce loyalty in its customers, and expresses interest in buying some of the crack cocaine Wallace expects to receive soon.

In a twenty-five-page section of the affidavit, the DEA agent explained why normal investigative procedures appeared unlikely to succeed or to be too dangerous to achieve the objectives of the interception.  The affidavit discussed the progress of the investigation to date, including interceptions of communications over Wallace's telephone, the use of two undercover officers to purchase crack cocaine, both of whom were suspected by the DTO of working for law enforcement, one

4

informant's limited access to information, the limited information available to a second informant, the results of multiple surveillances conducted by law enforcement, and the investigators' reliance on cameras located in the heart of the DTO's territory.  Over the course of these pages, the affidavit explains why these investigative techniques have not achieved the objectives of the investigation underlying the Title III application.  These objectives include the discovery, to the greatest extent possible, of the identities of the co-conspirators, the locations of their activities, and their methods for violating the law.  These pages discuss as well why other investigative steps would not achieve those objectives, including the use of geolocation information, telephone records, pen registers, trap-and-trace data, jail calls, parallel and related investigations, criminal records checks, Grand Jury subpoenas, witness interviews, search warrants, arrests, trash searches, and social media searches.

On March 2, 2020, the defendant was charged in three counts in a superseding indictment.  He was charged with one count of participating in a conspiracy to distribute and possess with intent to distribute cocaine base and cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and (C).  He was charged as well with one count of using and carrying a firearm during and in relation to that conspiracy in violation of 18 U.S.C. §

5

924(c)(1)(A)(i), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Trial is scheduled to occur on June 14, 2021. The defendant has moved to suppress the evidence gleaned from the wiretap on his cellphone on the grounds that it was unsupported by probable cause and the description of the alternative investigative means failed to meet the requirements of Title III.

## Discussion

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") governs court-ordered interceptions of oral communications. United States v. Yannotti, 541 F.3d 112, 124 (2d Cir. 2008). Title III strikes a "balance between the needs of law enforcement officials and the privacy rights of the individual." United States v. Concepcion, 579 F.3d 214, 218 (2d Cir. 2009) (citation omitted).

To authorize a Title III wiretap, a court must determine, on the basis of facts submitted by the applicant, that

> there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; and (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap.

Yannotti, 541 F.3d at 124 (citation omitted). Additionally, the statute requires "a full and complete statement as to whether or

6

not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

The purpose of requiring the Government to describe other possible means of investigation "is not to preclude the government's resort to wiretapping until after all other possible means of investigation have been exhausted." United States v. Diaz, 176 F.3d 52, 111 (2d Cir. 1999) (citation omitted). The statute imposes no duty on the Government to exhaust "all conceivable investigative techniques before resorting to electronic surveillance." Concepcion, 579 F.3d at 218. On the other hand, the court must scrutinize the Government's description of the alternative investigative procedures so "that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." Id. (citation omitted).

To meet the requirements of 18 U.S.C. § 2518, the Government's description of the alternative investigative procedures must be sufficiently detailed to "inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." United States v. Kirk Tang Yuk, 885 F.3d 57, 78 (2d Cir. 2018) (citation omitted). "[G]eneralized and conclusory statements that other

7

investigative procedures would prove unsuccessful will not satisfy Title III." Concepcion, 579 F.3d at 218 (citation omitted). The Government's showing regarding other investigative procedures must be read in a "practical and commonsense fashion." Id. (citation omitted).

I.  Probable Cause

The affidavit provides probable cause to find, as Judge Furman did, that the Target Subjects would use Livingston's cellphone during the period permitted by the Order of interception to facilitate the Target Offenses. This probable cause included the description of the incriminating conversations between Livingston and Wallace intercepted through the wiretap on Wallace's cellphone. While those conversations were sufficient to establish probable cause, the affidavit provided additional evidence supporting that finding. It provided abundant evidence of the criminal activities of the DTO and Livingston's association with its members, including his presence at the location of its activities and his frequent telephone calls with Wallace and another conspirator.

Livingston argues that the affidavit's description of his intercepted conversations with Wallace does not establish probable cause. Livingston acknowledges that the conversations were suspicious but contends they do not conclusively establish his participation in the DTO's illegal operations. According to

8

Livingston, they show at most that he knows Wallace, was likely aware of Wallace's drug dealing, and expressed an interest in buying drugs from Wallace on two occasions.  According to Livingston, however, the conversations do not establish that he was an active participant in the DTO, a leader of the DTO, or that he had information of its structure or suppliers.  Finally, he emphasizes that the affidavit does not contain evidence gleaned from informants, undercover officers or other witnesses confirming Livingston's participation in the DTO.

Livingston's objection fails.  His argument ignores the pertinent legal standard.  The Government had no burden to conclusively establish Livingston's guilt or to demonstrate that he led the DTO or had complete knowledge of its structure or activities.  The issue was whether the affidavit provided probable cause to believe that the interception of communications over Livingston's cellphone would produce evidence regarding the Target Offenses.  Livingston does not actually dispute that the affidavit provided such probable cause.

Livingston also overlooks the pertinent legal standard when he complains that the affidavit does not describe particular kinds of evidence linking him to the DTO's criminal endeavors.  If probable cause is provided, there is no obligation that the applicant also provide corroboration, much less provide

9

particular kinds of corroborating evidence such as reports from informants or undercover law enforcement officers.  In any event, Livingston's argument ignores the corroborating evidence that was present in the affidavit, including the pattern of communications between Livingston and Wallace and the sightings of Livingston at the location where the DTO operated.

    II.  Investigative Techniques

The affidavit contains a robust description of the progress of the investigation and of the success and limitations of the many avenues of investigation that had been utilized to date or considered and rejected.  It provided ample support for Judge Furman's finding in the Order of interception that "normal investigative techniques have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous."

Livingston argues that the affidavit did not explain why law enforcement officers did not attempt to introduce confidential informants or undercover officers to Livingston specifically, "which they had done successfully in the broader investigation."  He argues as well that the affidavit is deficient because it failed to explain why the investigators did not use witnesses or physical or video surveillance to confirm that he was a member of the DTO.

This argument also ignores much of the information presented in the affidavit. As explained in the affidavit, there had been only limited success in using undercover officers to gather evidence of the activities of the DTO. Indeed, two officers had been compromised due to those efforts. There is no obligation to pursue dangerous or unproductive investigative steps before seeking authorization under Title III. Livingston's motion overlooks the detailed descriptions given of the surveillance activities undertaken by the investigators and the reasons those efforts could have only limited success. In sum, the defendant's motion does not fairly describe the detailed showing made in the affidavit. That detailed showing provided a robust record to support Judge Furman's finding.

## Conclusion

Livingston's October 16, 2020 motion to suppress evidence of conversations intercepted through Title III wiretaps of his cellphone and evidence purportedly derived from those conversation is denied.

Dated:   New York, New York
         January 6, 2021

                                    _____
                                          DENISE COTE
                                    United States District Judge